UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KRISTINE TILDEN, as personal representative and next of kin, on behalf of WALTER DECARLO, <br><br> Plaintiff, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY and GE HEALTHCARE, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No.:  3:11-CV-628 <br> )         (VARLAN/SHIRLEY) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

This civil action is before the Court on the Motion to Dismiss [Doc. 4], submitted by defendants General Electric Company and GE Healthcare Inc. In the motion, defendants move the Court for an order dismissing the complaint of plaintiff Kristine Tilden, pursuant to Rules 8 and 12(b)(6), for failure to state a claim upon which relief may be granted. Plaintiff has responded in opposition [Doc. 9], and defendants have filed a reply [Doc. 10].

For the reasons set forth herein, defendants' motion to dismiss [Doc. 4] will be **GRANTED**, plaintiff's complaint will be **DISMISSED**, and this case will be **CLOSED**.

**I.     Relevant Facts[1]**

Plaintiff is the decedent and personal representative of Walter DeCarlo ("decedent" or "DeCarlo") [Doc. 1-2, ¶ 3.2]. Plaintiff is also the executrix of DeCarlo's estate [*Id.*, ¶¶ 1.2,

---

[1]The following facts are taken mostly from the complaint [Doc. 1-2], and will be assumed as true for purposes of the Rule 12(b)(6) motion. *See, e.g.*, *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007) (noting that in ruling upon motions to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff").

3.10]. On November 29, 2010, plaintiff alleges that DeCarlo underwent an MRI procedure at the Cheyenne Outpatient Diagnostic Center and Methodist Medical Center of Oak Ridge on an MRI machine manufactured, distributed, and sold by defendants [*Id.*, ¶¶ 3.2, 4.2]. Plaintiff alleges that during the procedure, a part of the MRI machine broke and seriously injured DeCarlo, fracturing his right forearm [*Id.*, ¶¶ 3.3, 3.4, 3.9]. Plaintiff alleges that the MRI machine was unsafe and unreasonably dangerous and that it was in an inoperable defective condition that DeCarlo had not contemplated [*Id.*, ¶ 4.3]. DeCarlo was admitted to the hospital for a open fracture internal fixation ("ORIF") to repair his fractured forearm [*Id.*, ¶ 3.6]. Plaintiff alleges that DeCarlo died on February 2, 2011 as result of illness and the fracture to his forearm and that his death was expedited by the "defective MRI machine"[*Id.*, ¶¶ 3.5, 3.9].

On November 23, 2011, plaintiff filed this products liability lawsuit in state court alleging strict liability, negligence, negligence per se, and implied and express breach of warranty [Doc. 1-2]. In the complaint, plaintiff requests damages "general, non-economic damages, . . . incidental and consequential damages[,]" "special, economic damages in the form of travel and travel-related expenses, burial expenses; and related wages and lost earning capacity damages." [*Id.*, ¶¶ 9.1, 9.2]. Plaintiff also requests damages for loss of consortium [*Id.*, ¶¶ 9.3]. Defendants removed the case to this Court [Doc. 1], and filed the instant motion to dismiss [Doc. 4].

## II.     Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In 2007, the United States Supreme Court modified the pleading standard in the

2

context of antitrust cases. *Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notably, the Supreme Court held that in order to survive a 12(b)(6) motion to dismiss—which attacks the sufficiency of a complaint—the plaintiff must "state a claim to relief that is plausible on its face." *Id.* In 2009, the Supreme Court extended the *Twombly* (or plausibility) standard to all federal civil cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1953 (2009). Under the *Twombly/Iqbal* standard, a claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). While this is "not akin to a 'probability requirement,'" the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted). In other words, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A plaintiff falls short of this standard by pleading facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct . . . ." *Id.*

In ruling upon motions to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc.*, 487 F.3d at 476. The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). *See also Iqbal*, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a

3

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555). Ultimately, this determination—whether a plaintiff's claim is "plausible"—is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citations omitted).

**III.    Analysis**

In the motion to dismiss, defendants assert that plaintiff's products liability claims do not satisfy the pleading requirements of *Twombly* and *Iqbal* because the complaint contains no facts under which the Court could infer that the MRI machine described in plaintiff's complaint was unreasonably dangerous or defective and contains no facts under which the Court could infer a casual connection between the alleged defect and DeCarlo's death. In regard to plaintiff's negligence per se claim, defendants assert that plaintiff has failed to pled any specific statute or regulation which defendants violated and that the applicable products liability statute, the Tennessee Product Liability Act of 1978 (the "TPLA"), Tenn. Code Ann. §§ 29-28-101, *et seq.*, cannot serve as a basis for such a claim. Defendants also contend that plaintiff has no individual cause of action against defendants and therefore would be entitled to no individual damages in her individual capacity, such as burial expenses and loss of consortium.[2]

---

[2]Plaintiff acknowledges in her response that living beneficiaries of an action "may seek a limited recovery for their own losses in addition to those of the decedent . . . [and that] the right of action itself remains one that is 'single, entire[,] and indivisible.'" *Kline v. Eyrich*, 69 S.W. 3d 197, 207 (Tenn. 2002) (citations omitted). Thus, to the extent plaintiff has requested her own individual damages in the complaint, such as loss of consortium damages, those damages are not recoverable as individual damages because plaintiff must request damages in her capacity as a legal representative of DeCarlo's estate, not on behalf of herself as an individual. *See id.* (finding that loss of consortium claims are not claims "for damages separate from the wrongful death action itself").

4

In response, plaintiff asserts that her products liability claims are correctly and adequately pled under Rule 8 of the Federal Rules of Civil Procedure, including her allegations that the MRI machine at issue was defective and unreasonably dangerous, and that there was a causal connection between the MRI machine and DeCarlo's injuries and death.[3] As to her negligence per se claim, plaintiff asserts that this claim is properly pled and that it should not be dismissed.

### A. The TPLA

Plaintiff's claims arise out of injuries allegedly suffered by DeCarlo and caused by an allegedly defective MRI machine "manufactured, distributed , and sold" by defendants. Each of plaintiff's claims sound in products liability and are covered by the TPLA.[4] "[I]t makes no difference whether the complaint is couched in terms of negligence, strict liability or breach of warrant, it has generally been held in the State of Tennessee that in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was

---

[3] The Court finds the *Twombly*/*Iqbal* standard to be the proper standard of review to apply when considering a motion to dismiss based on Rule 12(b)(6). *Minger v. Green*, 239 F.3d 793 (6th Cir. 2001), the case cited by plaintiff as setting forth the pleading requirements under Rule 8, was decided prior to *Twombly* and *Iqbal* and the Supreme Court's extension of the plausibility standard to all federal civil cases.

[4] The TPLA defines "[p]roduct liability action" to include "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Tenn. Code Ann. § 29-28-102(6). In addition, the TPLA states that a "'[p]roducts liability action' includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]" *Id.*

defective and unreasonably dangerous at the time the product left the control of the manufacturer." *Higgs v. Gen. Motors Corp.*, 655 F. Supp. 22, 23 (E.D. Tenn. 1985). Thus, regardless of plaintiff's theory of recovery—which includes strict liability, negligence, and implied and express breach of warranty—plaintiff must allege facts in her complaint for the Court to infer that the MRI machine was "defective" or "unreasonably dangerous" at the time it left the control of the manufacturer. *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) ("Unless the product was in a defective condition or unreasonably dangerous when it left the control of [the manufacturer], there is no liability pursuant to [the TPLA]."); Tenn. Code Ann. § 29-28-105(a) ("A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.").

Thus, at this stage of the proceeding, plaintiff must allege facts for the Court to infer that: "(1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *King*, 37 S.W.3d at 435). Under the TPLA, a product in a "[d]efective condition" means "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code. Ann. § 29-28-102(2). A product is "[u]nreasonably dangerous" if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its

6

characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." *Id.* § 29-28-102(8).

Under the TPLA, there are two tests for determining whether a product is unreasonably dangerous. *See id.* § 29-28-102(8). The "consumer expectation test" requires a showing that "the product's performance was below reasonable minimum safety expectations of the ordinary consumer having ordinary, 'common' knowledge as to its characteristics." *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 806 (Tenn. 2001). Under the "prudent-manufacturer test," the Court "imputes knowledge of the dangerous condition to the manufacturer, and then asks whether, given that knowledge, a prudent manufacturer would market the product. As the Tennessee Supreme Court has stated, '[t]he consumer expectation test is, by definition, buyer oriented; the prudent manufacturer test, seller oriented.'" *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 428-29 (6th Cir. 2007) (citations omitted). Only sellers and manufacturers, as those terms are defined in the statute, may be held liable under the TPLA. *See* Tenn. Code Ann. § 29-28-102(4), (7).

In all product liability actions, therefore "[a] plaintiff must show that there was something wrong with the product . . . and trace the plaintiff's injury to the specific defect." *King*, 37 S.W.3d at 435 (citations omitted). *See also Browder v. Pettigrew*, 541 S.W.2d 402, 404 (Tenn. 1976) (stating that "in a products liability action in which recovery is sought under the theory of negligence, the plaintiff must establish the existence of a defect in the product just as he does in an action where recovery is sought under the strict liability theory or for breach of warranty,

7

either express or implied") (citations omitted)). At this stage of the proceedings, plaintiff must therefore allege facts for the Court to infer that the MRI machine was defective or unreasonably dangerous, and that DeCarlo's injuries were caused by that defect or unreasonably dangerous condition.

**B.     Defective or Unreasonably Dangerous**

Plaintiff alleges that the MRI machine that broke and injured DeCarlo was in an "inoperable defective condition" that DeCarlo had not contemplated and therefore it was "unsafe and unreasonably dangerous." [Doc. 1-2, ¶ 4.3]. Plaintiff asserts that these allegations are all she needs to allege a products liability claim in compliance with Rule 8 because consumers expect MRI machines to heal people and when MRI machines proximately cause broken bones and death, the machines are defective and unreasonably dangerous.

These allegations are insufficient for the Court to infer that the MRI machine was defective or unreasonably dangerous. Courts have held on several occasions that even if a plaintiff allegedly suffered an injury from a product, it does not necessarily follow that the product was defective. *See Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 969 (E.D. Tenn. 2010) (finding that the plaintiff's allegations that he suffered an injury from a device does not, without more, show that the device was defective); *King*, 37 S.W.3d at 435 (stating that "[i]n a product liability claim, the fact that a plaintiff is injured is not proof of a defect in the product") (citing *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 299 (Tenn. Ct. App.1995)); *King*, 37 S.W.3d at 435 (recognizing that "the failure or malfunction of the device, without more, will not

8

make the defendant liable") (citing *Harwell v. Am. Med. Sys., Inc.*, 803 F. Supp. 1287, 1298 (M.D. Tenn.1992)).

Taking the allegations in the complaint as true—that the MRI machine was defective or unreasonably dangerous and injured DeCarlo—plaintiff's claims fail because she has not alleged any facts about how the MRI machine was allegedly defective or unreasonably dangerous. Regardless of the theory of recovery—whether it be strict liability, negligence, or implied and express breach of warranty—plaintiff must allege *facts* for the Court to infer that the MRI machine was defective or reasonably dangerous, not simply rely on plaintiff's allegation that it was. Plaintiff's complaint contains only conclusory allegations and legal conclusions that the MRI machine "was in an inoperable defective condition" that rendered it "unsafe and unreasonably dangerous." [Doc. 1-2, ¶ 4.2]. *See, e.g., Frey v. Novartis Pharm. Corp.*, 642 F. Supp. 2d 787, 795 (S.D. Ohio 2009) (finding that the plaintiff had "done nothing more than provide a formulaic recitation of the elements of a claim under [the products liability statute]"). Such allegations and legal conclusions are not sufficient to survive defendants' Rule 12(b)(6) motion to dismiss.

Accordingly, the Court finds that plaintiff has failed to satisfy the *Twombly/Iqbal* plausibility standard because she has not alleged facts for the Court to infer that the MRI machine was defective or unreasonably dangerous, only asserting that it was so. *See Twombly*, 550 U.S. at 555 n.3 (stating that "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief" and legal conclusions are not sufficient).

### C. Causal Connection Between the Condition of the MRI Machine and DeCarlo's Injuries

Plaintiff alleges that the MRI machine broke, injured DeCarlo, and that his death was expedited by the defective MRI machine [Doc. 1-2, ¶¶ 3.3, 3.9]. She asserts that these allegations are sufficient to infer causation because she has directly pled "defectiveness and the injury related to the defect[.]" [Doc. 9, p. 2].

The Court disagrees.

Under Tennessee law, it is not enough that a plaintiff allege only that he or she suffered injuries from a product. *See, e.g., King*, 37 S.W.3d at 435 (stating that a plaintiff "must show that there was something wrong with the product . . . and trace the plaintiff's injury to the specific defect"). While plaintiff alleges that the MRI machine caused injury to DeCarlo and expedited his death, plaintiff has not alleged any facts indicating how the alleged defect—whether it was in the design or in the manufacturing of the MRI machine—caused DeCarlo's injuries. As stated succinctly in *Maness v. Boston Scientific*, "[t]he relevant question is not whether the [the product] caused [the plaintiff] pain; the issue is whether the alleged *defective design* or *manufacturing* of the [the product] caused [the plaintiff] pain. *Id.*, 751 F. Supp. 2d at 970 (citing *Browder*, 541 S.W.2d at 404). Plaintiff's complaint contains no factual allegations regarding this issue of causation.

As the Supreme Court stated in *Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's complaint fails to satisfy *Iqbal* for two reasons. First, because plaintiff has failed to allege facts for the Court to infer that the MRI

10

machine was defective or unreasonably dangerous and second, because plaintiff has failed to allege facts for the Court to infer that the MRI machine's allegedly defective or unreasonably dangerous condition caused DeCarlo's alleged injury.

Accordingly, plaintiff's claims for strict liability, negligence, breach of implied warranty, and breach of express warranty will be **DISMISSED** because all of these claims require that the Court be able to infer that the MRI machine was defective or unreasonably dangerous and caused DeCarlo's injury.

### D. Negligence Per Se

The complaint does not identify the statute under which plaintiff had pled her claim for negligence per se [Doc. 1-2, ¶¶ 6.1-6.5]. *See McConkey v. McGhan Med. Corp.*, 144 F. Supp. 2d 958, 965 (E.D. Tenn. 2000) (stating that "[t]o establish a claim of negligence per se, one must identify that the defendant breached a statute, regulation, or ordinance"). In response to defendants' motion to dismiss, plaintiff asserts that the claim of negligence per se falls under the TPLA. In reply, defendants contend that the TPLA is a non-penal statute, constituting a set of legislatively-created legal duties, which provides a civil cause of action for its breach and therefore cannot also serve as a basis for an independent claim for negligence per se.

The Tennessee Supreme Court has summarized the doctrine of negligence per se as follows:

> The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se. "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate." *Prosser and Keeton on Torts* § 36, p. 220 (5th ed.1984). In

11

> order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. It must also be established that the injured party was within the class of persons that the statute was meant to protect.

*Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) (citations omitted). The Tennessee Court of Appeals, in discussing this doctrine, has noted that the Tennessee Supreme Court has "over the years, been quick to invoke the negligence per se doctrine with regard to violations of penal statutes designed to protect the public." *Rains v. Bend of the River*, 124 S.W.3d 580, 592 (Tenn. Ct. App. 2003) (citation omitted). However, the *Rains* court also noted that negligence per se "is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute [and] . . . [n]ot every statutory violation amounts to negligence per se." *Id.* at 590 (citations omitted). The *Rain* court provided the following articulation of the difference between legislatively created legal duties which may not give rise to negligence per se claims, and legislatively created legal duties, in the form of penal statutes, which may:

> First, the General Assembly may create a legal duty and then provide a civil cause of action for its breach. Second, the General Assembly may enact a penal statute that does not explicitly provide a civil remedy, and the courts may then derive a civil legal duty from the penal statute. "Negligence per se" is the term used to describe one of the two doctrines associated with the latter process.

*Id.* at 589.[5]

---

[5] The *Rains* court gave the Tennessee Consumer Protection Act of 1977 (the "TCPA"), Tenn. Code Ann. §§ 47-18-101, *et seq.*, as an example of a statutory scheme that imposes a legal duty and provides for a private cause of action, and thus, does not give rise to a claim for negligence per se.

Case 3:11-cv-00628   Document 11   Filed 03/26/12   Page 12 of 15   PageID #: 95

In enacting the TPLA, the General Assembly created the first type of legislatively created legal duty described in *Rain*—a statute that provides a civil cause of action for its breach and provides a remedy for plaintiffs who suffer injuries caused by defective or unreasonably dangerous products. *See Johnson v. Electrolux Home Prods.*, No. 2:09-CV-142, 2011 WL 4397494, at *4 (E.D. Tenn. Aug. 31, 2011). The TPLA also provides that a plaintiff may bring such causes of action under several different theories. *See* Tenn. Code Ann. § 29-28-102(6) (defining "[p]roduct liability action" as including, and not limited to, a number of theories).

Accordingly, in light of the foregoing, plaintiff's negligence per se claim will be **DISMISSED** because the TPLA is not the type of statute, penal or otherwise, that may serve as a basis for a claim of negligence per se, and plaintiff has provided the Court with no other law indicating or stating to the contrary.

### E. Plaintiff's Request to File an Amended Complaint

Plaintiff has alternatively requested that the Court grant her the opportunity to amend her complaint given the infancy and procedural history of this case [Doc. 9, p. 4]. Pursuant to Federal Rule of Civil Procedure 15, a court may grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Courts must read Rule 15 in conjunction with Federal Rule of Civil Procedure 7(b), which requires that a party make such a request in a motion that states with "particularity the grounds for seeking the order[.]" Fed. R. Civ. P. 7(b); *see also Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006). The United States Court of Appeals for the Sixth Circuit does not look favorably upon bare requests for leave to amend in a response to a motion to dismiss when the requesting party could have filed a proper motion to amend and

13

Case 3:11-cv-00628   Document 11   Filed 03/26/12   Page 13 of 15   PageID #: 96

attached a proposed amended complaint for consideration by the court. *See Pearson Enterprises, Inc.*, 434 F.3d at 853; *see also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004); *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 783-84 (6th Cir. 2000); *Techdisposal.com, Inc. v. CEVA Freight Mgmt.*, No. 2:09-cv-356, 2009 WL 4283090, at *4-*5 (S.D. Ohio, Nov. 30, 2009). As the Sixth Circuit has explained:

> Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint[.] Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.

*PR Diamonds, Inc.*, 364 F.3d at 699 (quoting *Begala*, 214 F.3d at 784 (emphasis in original)).

Plaintiff has failed to follow the proper procedure for submitting a motion to amend the complaint. Plaintiff has also not submitted a proposed amended complaint for review and consideration by the Court as required by Local Rule 15.1, Form of a Motion to Amend and Its Supporting Documentation:

> A party who moves to amend a pleading shall attach a copy of the proposed amended pleading to a motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, shall, except by leave of Court, reproduce the entire pleading as amended and may not incorporate any prior pleading by reference. A failure to comply with this rule may be grounds for denial of the motion.

14

E.D. LR. TN 15.1 (revised June 6, 2011).[6] Finally, plaintiff has not stated, with particularity, the grounds upon which she is requesting leave to amend. Simply stating that leave should be granted because this case is in its "infancy" and due to the "procedural history" is not sufficient.

Accordingly, because plaintiff has not complied with Rule 7(b) or with the Local Rules, the Court will not accept plaintiff's alternative request contained in the response to defendants' motion to dismiss as a proper motion to amend.

## IV. Conclusion

Based upon the foregoing, defendants' motion to dismiss [Doc. 4] will be **GRANTED**, plaintiff's complaint will be **DISMISSED**, and this case will be **CLOSED**. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE

---

[6]A prior version of Local Rule 15.1 also required the party filing the amended pleading to "reproduce the entire pleading as amended." E.D. LR. TN 15.1 (revised Dec. 10, 2010). That prior version, however, stated that a failure to comply with this rule "is not grounds for denial of the motion." *Id.*